## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

JAMES A. METCALF,                )
                                       )
     Plaintiff,                       )
                                         )
v.                               )        Civil Action No. 3:21CV177–HEH
                                       )
THE GEO GROUP, INC., *et al.*,    )
                                       )
     Defendants.                      )

### MEMORANDUM OPINION
### (Granting in Part and Denying in Part
### Defendants' Motion for Summary Judgment)

James A. Metcalf, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] Metcalf names the following individuals and entities as Defendants: the Geo Group, Inc.; Michael Breckon, Warden of the Lawrenceville Correctional Center ("LVCC"); Christy Jones, the LVCC Grievance Coordinator; Andrea Green, Assistant Grievance Coordinator at LVCC; Deborah Lewis, Regional Ombudsman for the Eastern District of the Virginia Department of Corrections ("VDOC"); and, Stephen Herrick, the Health Service Director for the VDOC. (ECF No. 1 at 1.) The matter is before the Court on a Motion for Summary Judgment filed by Defendants Lewis and Herrick. Metcalf brings the following claims against these two Defendants:

Claim One      "Defendant Lewis violated the Plaintiff's rights when she gained personal knowledge of the Plaintiff's complaint and his serious medical needs

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits the emphasis in quotations from the parties' submissions.

through the Plaintiff's appeals of the Grievance Coordinator's decision to deny intake and logging without merit." (ECF 1 at 26.)

(a) Specifically, on November 22, 2019, Metcalf submitted a grievance complaining that he was not seen in a timely manner by health care professionals. (ECF No. 1 at 7.) The grievance coordinator rejected Metcalf's grievance because Metcalf failed to attach his informal complaint. (*Id.* at 8.) Metcalf appealed that intake decision and Defendant Lewis upheld the intake decision. (*Id.*)

(b) On or about August 28, 2020, Metcalf submitted a grievance wherein he complained that he had not been seen by the dental department for follow up on his treatment plan since February 11, 2020. (ECF No. 1-1 at 32.) Because Metcalf had not received a timely response to his informal complaint regarding this issue, he attached a copy of the informal complaint receipt to the grievance. (ECF No. 1 at 13.) Nevertheless, on August 28, 2020, the grievance coordinator rejected the grievance because Metcalf failed to attach a copy of the informal complaint to the grievance. (*Id.*) Metcalf appealed the decision to deny intake to his grievance. (*Id.* at 14.) On September 2, 2020, Defendant Lewis upheld the decision to deny intake of his grievance. (*Id.*)

(c) On January 19, 2021, Metcalf submitted a grievance complaining about the delay in providing his prescription pain medication following his oral surgery. (*Id.* at 17.) The grievance coordinator denied the grievance at intake because it was filed after the 30-day filing period. (*Id.* at 18.) Metcalf appealed that decision. (*Id.*) Defendant Lewis upheld the intake decision and noted that the lack of medication did not affect Metcalf personally because Metcalf could have obtained Motrin from the prison pharmacy. (*Id.*)

Claim Two     Defendant Herrick violated Metcalf's Eighth Amendment rights under the doctrine of supervisory liability. As the Health Service Director, Herrick failed to properly supervise staff. "Herrick gained personal knowledge through Plaintiff's appealed grievances submitted by the Plaintiff on"
(a) February 6, 2020 and (b) November 17, 2020. (*Id.* at 27.)

Metcalf demands monetary damage and injunctive relief.[2] For the reasons set forth

below, the Motion for Summary Judgment will be granted in part and denied in part.

---

[2] Defendants Herrick and Lewis have not addressed Metcalf's demands for injunctive relief in their Motion for Summary Judgment.

## I. Summary Judgment Standard

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed

to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting

*Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court

a duty to sift through the record in search of evidence to support a party's opposition to

summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting

*Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P.

56(c)(3) (stating "[t]he court need consider only the cited materials . . . .").

In support of their Motion for Summary Judgment, Defendant Lewis and Herrick

submitted their own affidavits (ECF Nos. 22-1, 22-2), Metcalf's grievance material, and a

copy of Operating Procedure § 866.1 ("Operating Procedure § 866.1, ECF No. 22-1 at 6–

26.)

In response, Metcalf submitted a Memorandum of Law in Opposition to

Defendant's Motion for Summary Judgment (ECF No. 25) and copies of some of his

medical records. Metcalf attempts to transform his Memorandum of Law into a sworn

statement by swearing to the content of the same under penalty of perjury. The Court

previously informed Metcalf that:

> [T]he Court will not consider as evidence in opposition to any motion for
> summary judgment a memorandum of law and facts that is sworn to under
> penalty of perjury. Rather, any verified allegations must be set forth in a
> separate document title "Affidavit" or "Sworn Statement," and reflect that
> the sworn statements of fact are made on personal knowledge and the
> affiant is competent to testify on the matters stated therein. *See* Fed. R.
> Civ. P. 56(c)(4).

(ECF No. 9 at 2.) Accordingly, the Court will not treat the Memorandum of Law as

evidence. However, Metcalf did swear to the contents of his Complaint under penalty of

perjury. (ECF No. 1 at 33.)  Additionally, Metcalf attached grievance material and other documents to his Complaint.  (ECF No. 1-1.)

In light of the foregoing principles and submissions, the following facts are established for the purposes of the Motions for Summary Judgment.  All permissible inferences are drawn in favor of Metcalf.

## II. Relevant Facts

### A.      Grievance Procedure at the Virginia Department of Corrections

Operating Procedure § 866.1, Offender Grievance Procedure, is the mechanism used to resolve inmate complaints in the VDOC.  (ECF No. 22–1 ¶ 4.)  Offenders receive an orientation to the grievance procedure system when they arrive at a VDOC facility. (Operating Procedure § 866.1.IV.A.4.)  Operating Procedure § 866.1 requires that, before submitting a formal grievance, the inmate must demonstrate that he or she has made a good faith effort to resolve the grievance informally through the procedures available at the institution to secure institutional services or resolve complaints.  (*Id.* § 866.1.V.A.) Generally, a good faith effort requires the inmate to submit an informal complaint form. (*Id.* § 866.1.V.A.1–2.)  If the informal resolution effort fails, the inmate must initiate a regular grievance by filling out the standard "Regular Grievance" form. (*Id.* § 866.1.VI.A.2.)

"The original *Regular Grievance* (no photocopies or carbon copies) should be submitted by the offender through the facility mail system to the Facility Unit Head's Office for processing by the Institutional Ombudsman/Grievance Coordinator."

(*Id.* § 866.1.VI.A.2.b.)  The offender must attach to the regular grievance a copy of the informal complaint or other documentation demonstrating their attempt to informally resolve the issue.  (*Id.* § 866.1.VI.A.2.a.)  Additionally, "[i]f 15 calendar days have expired from the date the *Informal Complaint* was logged without the offender receiving a response, the offender may submit a *Grievance* on the issue and attach the *Informal Complaint* receipt as documentation of the attempt to resolve the issue informally."  (*Id.* § 866.1.V.A.3.)  A formal grievance must be filed within thirty days from the date of the incident or occurrence, or the discovery of the incident or occurrence, except in instances beyond the offender's control.  (*Id.* § 866.1.VI.A.1.)

Up to three levels of review exist for a regular grievance.  (*Id.* § 866.1.VI.C.)  The Facility Unit Head of the facility in which the offender is confined is responsible for Level I review.  (*Id.* § 866.1.VI.C.1.)  If the offender is dissatisfied with the determination at Level I, he or she may appeal the decision to Level II, a review of which is conducted by the Regional Administrator, the Health Services Director, the Superintendent for Education, or the Chief of Operations for Offender Management Services.  (*Id.* § 866.1.VI.C.2.)  The Level II response informs the offender whether he or she "qualifies for" an appeal to Level III.  (*Id.* § 866.1.VI.C.2.g.)

Defendant Herrick is the Director of Health Services for the VDOC.  (ECF No. 22-2 at 2.)  As the Health Services Director, Defendant Herrick, manages the overall operation of the VDOC's Health Services.  (*Id.*)  Additionally, in this capacity, Defendant Herrick issues Level II responses to inmate grievances concerning medical treatment.

(*Id.*)  Defendant Herrick considered all information available to him when he "considered [Metcalf's] grievance appeals." (*Id.* at 3.)

### B.    The November 25, 2019 Grievance

On or about November 25, 2019, Metcalf submitted a grievance wherein he stated that he had submitted a request to see the dentist on October 18, 2019. (ECF No. 22-1 at 20.)  Metcalf complained that, although VDOC policy required a response within 72 hours, he was not evaluated until November 13, 2019. (*Id.*)  On November 25, 2019, the grievance coordinator refused the grievance at intake, noting that Metcalf had failed to attach a copy of his informal complaint to his grievance. (*Id.* at 21.)

Metcalf appealed that intake decision. (*Id.*)  Defendant Lewis upheld the intake decision. (*Id.*)

### C.    The February 6, 2020 Grievance (LVCC–20–REG–00015) and Appeal

On January 13, 2020, Metcalf submitted an informal complaint asserting that, it took eighteen days for the dental department to respond to his request for care and, as of that date, he had not received dental care. (ECF No. 1-1 at 17.)  On January 29, 2020, dental staff responded to the informal complaint and noted that Metcalf was seen by dental staff on January 15, 2020 and had three teeth extracted. (*Id.*)  It was further noted that Metcalf was scheduled for a follow-up appointment. (*Id.*)  Thus, Metcalf had received dental care by the time he submitted his February 6, 2020 grievance.

On or about February 6, 2020, Metcalf submitted a grievance wherein he stated:

> I submitted a request form for dental care on Dec. 12, 2019, for a loose tooth that was causing me pain.  Request form was received by

> medical on Dec. 13, 2019.  Dental response was on Dec. 31, 2019, (18
> day[s] later).  As of this date, Jan 13, 2020, I have yet to be seen by medical
> or dental violating OP 720.1 Section IV, B.3. which states:  . . . "medical
> requests should be triaged within 24 hours by a qualified health care
> professional or health-trained staff and the offender seen by a qualified
> health care professional with 72 hours (96 hours on weekends)."

(ECF No. 1-1 at 19.)  Metcalf stated he wanted training for the medical staff to comply

with O.P. 720.1 and "to speak with the [Health Service Administrator] and Warden

concerning this issue."  (*Id.*)

On or about March 12, 2020, the Warden responded to the grievance.  (ECF

No. 22-2 at 5.)  Initially, the Warden recounted the results of the informal process.  (*Id.*)

Thereafter, the Warden stated:

> The DOC will provide access to routine dental care for offenders, as the
> resources of staff, time, and materials are available and commensurate with
> the offender practicing good oral hygiene habits.  Routine dental treatment
> is elective and an offender must request this care by using the appropriate
> request form.  Access to this care is equitably controlled by the use of an
> appointment book or scheduler template to schedule according to the
> chronological date on the request form.
>     Investigation reveals that routine dental care is to be initiated by a
> comprehensive exam, a charting update, necessary radiographs,
> development of a written treatment plan, and oral health education.
> Investigation into your complaint reveals that according to N. Anderson-
> Brown Dental Assistant, your name was placed on the list in chronological
> order in which it was received.  The Dentist saw you on January 15, 2020,
> at which time you had three teeth extracted.  You were scheduled to return
> for a follow up visit.  Investigative information obtained at this level
> reflects that resolution was applied at the informal level and the matter was
> resolved at that time.  Based on the information provided, I have
> determined that your formal grievance is Unfounded.  Consequently, no
> remedy is warranted at this level.  If you are having any further
> complications, you will need to submit another request for services.
>     . . . .

> After thoroughly reviewing the information presented by staff in response to your complaint and the policy governing the issue, I find your grievance to be UNFOUNDED.
> The reason (s) for my determination is no violation of policy.

(*Id.*)

Metcalf appealed that determination to the Office of the Health Service Director.

(ECF No. 1-1 at 22.) Metcalf stated that he wanted to appeal because:

> The fact of the matter is being ignored. It took 18 days for the request for dental services to be sent from the Medical Department to the Dental Department. Then another 15 days to be seen by ANY medical personnel. In accordance with OP720.1, I should have been seen by a medical care provider within 96 hours to determine urgent or routine. Instead, I had to wait 33 days before any examination took place.

(*Id.*)

On April 14, 2020, J. Dillman, the Chief of Operations for Health Services, responded to Metcalf's appeal.[3] (ECF No. 22-2 at 4.) J. Dillman concluded that "dental staff has followed policy as stated in OP 720.6 in scheduling your dental appointment. This grievance is unfounded." (*Id.*)

### D.    The August 28, 2020 Grievance

On August 28, 2020, Metcalf submitted a grievance wherein he complained that the mail was not distributed on July 20, 2020. (ECF No. 22-1 at 22.) The grievance coordinator rejected the grievance at intake because it was filed beyond the thirty-day filing period. (*Id.* at 23.) Metcalf appealed that decision. Although Defendant Lewis swears that she upheld that decision, (*id.* at 4), the back of the grievance reflects that

---

[3] "When a grievance is received for a response at Level II, the inmate's medical record is reviewed with institutional medical staff to ensure that his complaints are being addressed." (ECF No. 22-2 at 2.)

Defendant Lewis marked the grievance as follows: "The grievance meets the criteria for intake and is being returned to the Warden/Superintendent for logging." (*Id.* at 23.)

### E.     November 17, 2020 Grievance (LVCC–20–REG–00190)

On October 19, 2020, Metcalf submitted an informal complaint wherein he complained that: "I began a dental procedure in January 2020 and was scheduled for subsequent follow up procedures in Feb. & Mar. 2020. Both of which were cancelled. I still have yet to be seen by a dentist 9 months later." (ECF No. 1-1 at 46.) On November 5, 2020, a nurse from Geo Secure Services responded, "please be advised that we are referring you to off-site dentistry as indicated by the ARNP on 10/21/20. Our dental clinic has been place under 'red zone' status by VADOC & unfortunately we are only able to examine and cannot perform procedures." (*Id.*)

On or about November 17, 2020, Metcalf submitted a regular grievance wherein he repeated his allegations from the informal complaint. (*Id.* at 48.) Metcalf added that, "I am now experiencing tooth pain daily and taking 1200 – 1600 mg of Motrin daily." (*Id.*) On December 9, 2020, the Warden responded, in pertinent part:

> Investigation into your complaint reveals that in a preventative measure for the recent COVID-19 pandemic, the Dental Department was deemed a red zone and only able to examine and not perform procedures. It is confirmed by C. Yarger Regional Health Services Manager (GEO) that you are scheduled for an offsite dentistry appointment. The outside facility determines the date of the appointment, not Lawrenceville Correctional Center.
> . . . .
> After thoroughly reviewing the information presented by staff in response to your complaint and policy governing the issue, I find your grievance to be UNFOUNDED.
> The reason (s) for my determination is no violation of policy.

(*Id.* at 49.)

On December 10, 2020, Metcalf appealed that determination to the office of the

Health Services Director and stated:

> I have not been seen by a dentist in accordance with O.P. 720.6
> Section V.F2b.  "If a treatment plan requires several appointments
> subsequent appointments will be no more than twelve (12) weeks apart
> when the institution has an on-site dental clinic." Page 7 of 10.  I haven't
> been seen since February 2020!  Pre-COVID.  According to medical, I was
> scheduled for off-site dentistry on 10/21/2020 yet I have not been sent to an
> off-site dentist as of 12/10/2020 (50 days).

(*Id.* at 50.)

On January 14, 2021, Metcalf was transported to an off-site oral surgeon "where

he had seven (7) teeth extracted, [almost] 12 months since his last dental visit at LVCC

on 1/15/2020."  (ECF No. 1 at 17.)

On February 11, 2021, J. Dillman, the Chief of Operations for Health Services,

responded to Metcalf's appeal.  (ECF No. 22-2 at 3, 13.)  Dillman stated,

> Based on the information provided and upon further investigation, I
> concur with the Level I response and have determined your grievance
> **UNFOUNDED.**  A review of this case revealed that you submitted a
> request.  You were provided an appointment and treated under the most
> recent Covid-19 policies/protocol with respect to treatment priority.  The
> dental staff has followed policy as stated in OP 720.6 in scheduling your
> dental appointment.  This issue is governed by **OP 720.6.**
> **If you have any further issues, please resubmit a sick call request**
> **for further evaluation of your medical needs and treatment plan.**  You
> are encouraged to follow the recommendations of the health care staff as
> well.  There is no violation of policy/procedure regarding this issue.  No
> further action is needed from this level.  **In accordance with OP 866.1**
> **governing the Offender Grievance Procedure, Level II is the last level**
> **of appeal for this complaint.  All administrative remedies have been**
> **exhausted regarding this issue.**

11

(*Id.* at 13.)

### F.    January 19, 2021 Grievance

On December 28, 2020, Metcalf submitted an informal complaint wherein he complained:

> I have not received my medication through self-meds.  I was seen by NP Manswell, who prescribed me Zertec for allergies, and re-newed my px for Motrin for toothache pain on December 11, 2020.  I have yet to be seen by a dentist or to go out for an appointment. I need my medication.

(ECF No. 1-1 at 51.)  On January 8, 2021, Metcalf received his prescriptions from the LVCC pharmacy.  (ECF No. 1 at 17.)

On January 14, 2021, a nurse responded to Metcalf's informal complaint and stated, "Review of your record indicates that you were sent off site on 1/14/21 to the oral surgeon & provided with pain medication."  (ECF No. 1-1 at 51.)

On January 19, 2021, Metcalf executed a grievance wherein he complained:

> I have not received my medication through self-meds.  I was seen by NP Manswell, who prescribed me Zertec for allergies and renewed my Px for Motrin for toothache pain on December 11, 2020.  I have yet to been seen by a dentist or go out for an appointment, I need my medication.  I received my medication on the 7th of January, 4 weeks after seeing NP Manswell and stopping by the pill window numerous times.  Why such a delay in filling the Px?

(*Id.* at 53 (internal quotation marks omitted).)  The grievance, however, was not stamped received in the LVCC Grievance Office until February 4, 2021.  (*Id.*)  Therefore, the grievance coordinator refused the grievance at intake because it was submitted after the thirty-day filing period.  (ECF No. 1 at 18.)

Metcalf appealed that intake decision and claimed that he had deposited the grievance in the institutional mailbox on January 19, 2021 and it should have been accepted as timely filed. (ECF No. 1-1 at 54–55.) Defendant Lewis upheld the intake decision, but for a different reason. (*Id.* at 56.) Specifically, Defendant Lewis noted the grievance should have been rejected for the reason that "'Does not affect you personally-did not cause harm/risk.' You could have gotten the [over the counter] Motrin from the Commissary." (*Id.*)

### III. Analysis

To survive a motion for summary judgment on an Eighth Amendment "cruel and unusual punishment" claim, Metcalf "must prove two elements: (1) that objectively the deprivation of a basic human need was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). An inmate must demonstrate both that "the prison official acted with a sufficiently culpable state of mind (subjective component) and . . . the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). "These requirements spring from the text of the amendment itself; absent intentionality, a condition imposed on an inmate cannot properly be called 'punishment,' and absent severity, such punishment cannot be called 'cruel and unusual.'" *Id.* (citing *Wilson*, 501 U.S. at 298–300). "What must be established with regard to each component

13

'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that the defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). Furthermore, in evaluating a prisoner's complaint regarding medical care, the Court is mindful that "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04). In this regard, the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

A.     **Claim One (a) – November 19, 2019 Grievance**

In Claim One (a), Metcalf seeks to hold Defendant Lewis liable for her decision to uphold the grievance coordinator's decision to reject at intake Metcalf's November 19, 2019 grievance. That grievance was rejected because Metcalf failed to attach a copy of his informal complaint to the grievance. Metcalf fails to demonstrate that Defendant Lewis was aware that upholding that appropriate intake decision posed a substantial risk

15

of serious harm to Metcalf's person. Metcalf always remained free to resubmit the grievance with an informal complaint and pursue additional dental care. Accordingly, Claim One (a) will be dismissed.

### B.   Claim Two (a) – February 6, 2020 Grievance and Appeal

In Claim Two (a), Metcalf seeks to hold Defendant Herrick liable under a theory of supervisory liability for his alleged inadequate response to Metcalf's February 6, 2020 grievance and appeal. In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Furthermore, in order to establish the first element,

> a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

*Id.* (citations omitted).[4]

---

[4] To the extent that Metcalf contends that Defendant Lewis is liable for the conduct described in Claims 1(a) or 1(b), he fails to demonstrate deliberate indifference on the part of Defendant Lewis.

16

With respect to the second element, "[a] plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* (quoting *Slakan v. Porter*, 737 F.3d 368, 373 (4th Cir. 1984). Finally, with respect to the third element, "[c]ausation is established when the plaintiff demonstrates an 'affirmative causal link' between the supervisor's inaction and the harm suffered by the plaintiff. *Id.* (quoting *Slakan*, 737 F.2d at 376).

In the February 6, 2020 Grievance, Metcalf complained that there had been an inordinate delay in responding to his December 12, 2019 request for dental care. Nevertheless, by the time he submitted his February 6, 2020 Grievance, Metcalf had received dental care and was scheduled for a follow up appointment. The Warden noted these facts in responding to Metcalf's grievance and determining that it was unfounded. Metcalf appealed that determination. J. Dillman, the Chief of Operations for Health Services, responded to Metcalf's appeal and upheld the Warden's determination.

With respect to the first element, Defendants contend that because Dillman responded to the appeal, the rejection of the appeal fails to demonstrate that Defendant Herrick had "personal knowledge of the medical care that Plaintiff was or was not receiving." (ECF No. 22 at 11.) In making this argument, Defendants ignore the evidence in Defendant Herrick's sworn statement that, as the Health Services Director, he issues Level II responses to inmate grievances concerning medical treatment. (ECF No. 22-2 at 2.) Further, Defendant Herrick swears that he considered all information available to him when he "considered [Metcalf's] grievance appeals." (*Id.* at 3.) Read in

favor of Metcalf, this evidence establishes that, while Dillman may have signed the rejection of Metcalf's appeal, Defendant Herrick reviewed Metcalf's appeal and was the final arbiter of that appeal. Nevertheless, the February 6, 2020 Grievance and appeal fails to provide evidence to satisfy the second and third elements necessary for establishing the supervisory liability of Defendant Herrick. The content of that grievance and appeal failed to indicate that any subordinate was acting with deliberate indifference to Metcalf's dental needs, much less that the denial of Metcalf's appeal caused Metcalf to suffer any injury. By the time he filed the appeal, Metcalf had received dental care and was scheduled for additional dental care. Accordingly, Claim 2(a) will be dismissed.

**C.     Claim One (b) – August 28, 2020 Grievance**

In Claim One (b), Metcalf seeks to hold Defendant Lewis liable for her decision to uphold the grievance coordinator's decision to reject at intake Metcalf's August 28, 2020 grievance. Once again, Metcalf fails to demonstrate that Defendant Lewis was aware that upholding that intake decision posed a substantial risk of serious harm to Metcalf's person because Metcalf always remained free to resubmit the grievance and pursue additional dental care. Accordingly, Claim One (b) will be dismissed.

**D.     Claim Two (b) – November 17, 2020 Grievance and Appeal**

In Claim Two (b), Metcalf seeks to hold Defendant Herrick liable under a theory of supervisory liability for his allegedly inadequate response to Metcalf's November 17, 2020 grievance and appeal. In that November 17, 2020 Grievance, Metcalf complained that he began a dental procedure in January of 2020 and his follow-up procedures had

been cancelled. Metcalf noted that it was nine months later and he had yet to be seen by

a dentist. Finally, Metcalf noted that he was experiencing daily pain for which he had

been prescribed a significant dose of Motrin. In finding his grievance unfounded, the

Warden stated that LVCC's dental department was not able to perform dental procedures

because of the COVID-19 pandemic and that Metcalf had been scheduled for an off-site

dentistry appointment. Metcalf appealed that determination and noted that as of

December 10, 2020, he had yet to be seen by an off-site dentist.

On February 11, 2021, J. Dillman responded to Metcalf's appeal. (ECF No. 22-2

at 3, 13.)[5] Dillman concluded that the grievance was unfounded because Metcalf was

eventually provided an appointment and prison staff had followed the relevant policies

and Covid-19 protocols.[6]

As explained above in conjunction with Claim Two (a), read in favor of Metcalf,

this evidence establishes that while Dillman may have signed the rejection of Metcalf's

appeal, Defendant Herrick reviewed Metcalf's appeal and was the final arbiter of that

appeal. Moreover, the content of the grievance and appeal alerted Defendant Herrick to

---

[5] Although Operating Procedure § 866.1.VI.D.3 required a response to Metcalf's appeal within twenty days, or roughly December 31, 2020, the appeal was not responded to until February 11, 2021. According to Metcalf, Defendants delayed responding to his appeal while they sent the newly hired dentist at LVCC to evaluate Metcalf's dental condition. (ECF No. 1 at 16.)

[6] Generally, "a supervisor's after-the-fact denial of a grievance falls short of establishing § 1983 liability." *DePaola v. Ray*, No. 7:12CV00139, 2013 WL4451236, at *8 (W.D. Va. July 22, 2013) (citation omitted). Here, however, when Metcalf submitted his grievance and appeal, the lack of appropriate dental care was an ongoing problem. Moreover, the record suggests that Defendant Herrick had some knowledge and responsibility for the policy to cease providing dental treatment at LVCC.

the widespread practice of not providing any dental care, beyond examinations, at LVCC. Indeed, the response to the grievance and appeal, indicates that Defendant Herrick, as the Health Service Administrator, had approved or authorized the decision to not provide dental care at LVCC.[7] The evidence further establishes that Defendant Herrick knew or should have known that this policy caused substantial delays in the provision of necessary dental procedures and prolonged the pain for inmates such as Metcalf who had pressing dental needs. *See Berry v. Peterman*, 604 F.3d 435, 441–42 (7th Cir. 2010) (concluding that a two-month delay in providing effective treatment for dental pain is actionable); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("A three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983." (citing *Patterson v. Pearson*, 19 F.3d 439 (8th Cir. 1994))).

Finally, at this juncture, the evidence establishes an affirmative causal link between the lack of dental procedures at LVCC and Metcalf's injuries. In addition to prolonging Metcalf's pain, the record suggests that Metcalf's dental condition deteriorated because he was not provided any dental treatment for almost a year. *See Gevas v. Mitchell*, 492 F. App'x 654, 660 (7th Cir. 2012) (rejecting "the preposterous assertion that [defendant] could not be held responsible under the Eighth Amendment since, even without her help, [plaintiff] somehow got his tooth extracted after just 38 more days of pain" (citations omitted)). Specifically, on January 15, 2020, Metcalf was

---

[7] While the policy may ultimately prove to be an appropriate response to the Covid-19 pandemic, Defendants fail to direct the Court to relevant evidence to support the reasonableness of the policy.

seen by dental staff at LVCC and had three teeth extracted. Dental personnel at LVCC then set up a plan for addressing Metcalf's dental care which required follow-up appointments in the subsequent months. Those follow-up appointments were cancelled. *See White v. Napoleon*, 897 F.2d 103, 109–10 (3d Cir. 1990) (concluding that prison officials may act with deliberate indifference to a prisoner's serious medical needs when they "intentionally deny[ ] or delay[ ] access to medical care . . . or *intentionally interf[ere] with the treatment once prescribed*") (alterations in original) (citations omitted). Because of the suspension of all dental treatment at LVCC, Metcalf did not receive any further dental treatment until almost a year later, on January 14, 2021, when Metcalf was transported to an off-site oral surgeon and had seven additional teeth extracted. Given the current record, Defendant Herrick fails to demonstrate that he is entitled to summary judgment with respect to Claim 2(b).

**E.    Claim 1(c) – January 19, 2021 Grievance**

In Claim 1(c), Metcalf seeks to hold Defendant Lewis liable for her response to his appeal of the intake decision of the January 19, 2021 Grievance. In that January 19, 2021 Grievance, Metcalf complained about the delay in receiving medication and an off-site dental appointment. By the time he filed the grievance, Metcalf had received his medication and off-site dental appointment. The grievance coordinator concluded that the January 19, 2021 Grievance was untimely and denied intake. When Metcalf appealed that determination, Defendant Lewis upheld the intake decision, but she concluded that

the delay did not affect Metcalf personally because he could have obtained his Motrin from the prison commissary.

Simply "[r]uling against a prisoner on an administrative complaint does not [automatically] cause or contribute to the [constitutional] violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." *Id.* at 109–10; *cf. Chamberlain v. Clarke*, No. 7:14–cv–00013, 2014 WL 2154183, at *3 (W.D. Va. May 22, 2014) (noting that an inmate's "dissatisfaction with [a prison official's] responses to his grievances is a non-starter"). That is the case here. Metcalf fails to demonstrate that Defendant Lewis's decision caused or contributed to any delay in the provision of medication or dental care. Further, Metcalf fails to demonstrate deliberate indifference on the part of Defendant Lewis, because he fails to demonstrate that the adverse ruling posed a substantial risk of serious harm to his person. Moreover, to the extent Metcalf seeks to hold Defendant Lewis liable under a theory of supervisor liability, he fails to demonstrate there was a pervasive problem in the issuance of medications that posed an unreasonable risk of harm to inmates like Metcalf. *See Shaw*, 13 F.3d at 799. Accordingly, Claim 1(c) will be dismissed.

## IV.  Conclusion

The Motion for Summary Judgment (ECF No. 21) will be granted in part and denied in part. Claims 1(a), 1(b), 1(c), and 2(a) will be dismissed. The Motion for

Summary Judgment will be denied with respect to Claim 2(b).  The matter is referred to United States Magistrate Judge Mark R. Colombell for conducting a settlement conference.

An appropriate Order shall accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: January 31, 2022
Richmond, Virginia